DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Criminal Action No. 2016-0017 |
| ) | |
| AKIL SANTIAGO, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
  *For the Government*

**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant's "Motion to Suppress" (Dkt. No. 22), wherein Defendant seeks to suppress any evidence seized during his encounter with Officer Orlando Benitez on June 11, 2016. The Government filed its Opposition (Dkt. No. 27), and a suppression hearing was held on November 21, 2016. For the reasons discussed below, the Government will grant Santiago's Motion in part and deny it in part. Specifically, the Motion will be granted with respect to Santiago's response that he did not have a firearms license, and denied with respect to all other statements and physical evidence obtained during the interaction.

### I.   FACTUAL BACKGROUND

On August 19, 2016, Defendant Akil Santiago ("Defendant" or "Santiago") was charged by Information with two criminal counts: (1) possession of a firearm with an obliterated serial

number in violation of 18 U.S.C. § 922k; and (2) unlawful possession of a firearm in violation of 14 V.I.C. § 2253(a). (Dkt. No. 15).

Officer Orlando Benitez testified at the suppression hearing and the Government entered one exhibit: a photograph of the gun allegedly recovered from Defendant by Officer Benitez. The following summary is based on the record established at the hearing.[1]

The charges stem from an encounter which occurred on June 11, 2016, when Officer Benitez was off duty at Chris' Hideaway in Christiansted, Virgin Islands. The nightclub—which had a history of violent crime, including numerous assaults and incidents involving the discharge of weapons—was very crowded on the night in question. While inside the establishment, Officer Benitez observed a black object fall from another patron's pant leg. He then observed that patron (Santiago) recover the item from the ground and place it in his back pocket. Although Officer Benitez could not identify the object, this activity aroused his suspicion, and he continued to observe Santiago. Officer Benitez then observed another object fall from the individual's other pant leg and slide toward him. He recognized the object as the slide of a firearm. He further testified that from the time that he noticed Santiago, he observed Santiago fiddling with his pants in a suspicious fashion.[2]

Officer Benitez stepped on the slide, thus preventing Santiago from retrieving it. Santiago

---

[1] The Court bases the background factual discussion in this section on the record established at the suppression hearing. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant Santiago is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

[2] Officer Benitez testified that Santiago "leaned forward and removed something from his right pant leg." He then gave the Court a demonstration of how Santiago placed it in his back pocket in a manner consistent with an attempt to conceal the item. Officer Benitez also testified to observing Santiago interact with the bottom of his pant legs. When asked why the black object raised his suspicions before he recognized it as a slide, he stated it was because of the way that Santiago "stood up, started to fiddle with his pants . . . everything happened within a matter of seconds."

tapped Officer Benitez on his leg, and said, "big man, I need to get my thing." Officer Benitez responded "you cannot get it back."[3] It was around this time that the two men recognized each other. Santiago responded to Officer Benitez by stating "Coochie,[4] please don't lock me up, I have to go to my daughter's graduation."

Santiago then asked to speak with Officer Benitez. Officer Benitez testified that he and Santiago walked out of the bar side by side, and away from the crowd. Once outside, Officer Benitez asked Santiago where the weapon stock was, and Santiago responded that he did not have it on him. Officer Benitez patted-down Santiago for the remainder of the weapon, whereupon he felt and removed the weapon's frame from Santiago's right rear pants pocket. It was loaded with a magazine containing sixteen rounds of 9mm ammunition.

After the pat-down, Officer Benitez obtained handcuffs from his personal vehicle, leaving Santiago with a security officer from Chris' Hideaway. After retrieving the handcuffs, Officer Benitez placed them on Santiago. He then asked Santiago if he possessed a license for the firearm, to which Santiago responded in the negative.[5] Santiago was told that he was being detained "until further investigation" and "advised that he was going to be placed under arrest for the firearm." Officer Benitez then brought Santiago to the police station. At the station, Santiago was advised

---

[3] Officer Benitez testified that he retained the slide for his safety and for the safety of those around him.

[4] Santiago called Officer Benitez by his nickname, "Coochie," during their interaction.

[5] Hearing testimony was inconsistent on as to whether Santiago was placed in handcuffs before or after being asked about the firearms license. Officer Benitez testified first on direct examination that he placed Santiago in handcuffs after Santiago responded that he did not have a firearms license. However, on cross-examination, defense counsel asked Officer Benitez whether he knew if Santiago had a firearms license at the time Santiago was placed in handcuffs, to which the officer responded "No." As the burden is on the Government, the Court will credit Officer Benitez's response on cross-examination for purposes of its analysis—that Santiago was handcuffed before being asked whether he possessed a firearms license.

of his rights, and he refused to sign a consent to speak form. Officer Karen Stout was contacted, and she advised Officer Benitez that Santiago did not have a license to carry a firearm in the Virgin Islands. Officer Benitez further testified that Defendant was processed, read his *Miranda* rights, and placed under arrest at Anselmo Marshall Command after the firearms check was performed, and that the serial number on the weapon was found to be obliterated.

## II.   DISCUSSION

In his Motion to Suppress, Defendant argues that he was illegally searched and seized on June 11, 2016. (Dkt. No. 23 at 4). Defendant challenges whether reasonable suspicion existed based on the argument that there allegedly was no knowledge on the part of law enforcement regarding the commission of a crime because "the law enforcement officer that seized the firearm from Defendant said nothing that would indicate that Defendant possessed the gun unlawfully." (*Id.*). Defendant argues that Officer Benitez had neither reasonable suspicion nor probable cause to stop, search, and seize him. (*Id.*). Defendant seeks to exclude any firearm components seized on June 11, 2016 and Defendant's statement that he did not have a license to possess a firearm.

In its Opposition, the Government argues that Officer Benitez had statutory authority to seize the firearm under 23 V.I.C. § 488, and there was thus no Fourth Amendment issue.[6] (Dkt. No. 27 at 3-4). The Government asserts that there was no seizure when Officer Benitez and Santiago exited Chris' Hideaway, as the interaction was a consensual encounter at that point. (*Id.* at 5-7). Finally, the Government argues that Officer Benitez had reasonable articulable suspicion

---

[6] 23 V.I.C. § 488 provides, in relevant part, that where an officer reasonably believes that (i) a person is in possession of a firearm, (ii) which renders them presently dangerous to the officer or others, (iii) it is impracticable to obtain a search warrant, and (iv) it is necessary for the safety of the officer or others to take swift measures to discover whether such person is in possession of such a firearm, the officer may "ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a firearm in violation of section 454 of this title."

4

to frisk Santiago because he had observed the firearm slide fall from Santiago's person, and he held a reasonable belief that Santiago's possession of a firearm was unlawful, because Santiago asked Officer Benitez not to take him to jail. (*Id.* at 7-8).

### A. Applicable Legal Standards

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV; *see also* 48 U.S.C. § 1561 ("The right to be secure against unreasonable searches and seizures shall not be violated."). "Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). Evidence obtained as a result of an unreasonable search and seizure is inadmissible at trial and must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (requiring exclusion and suppression of evidence obtained as the result of an unlawful search and seizure).

Although law enforcement officers ordinarily must obtain a warrant based on probable cause before conducting a seizure, in *Terry v. Ohio*, 392 U.S. 1 (1968) the Supreme Court articulated an exception that allows police officers, consistent with the Fourth Amendment, to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). While "reasonable suspicion" must be more than an inchoate "hunch," the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop. *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (citing *United States v. Sokolow,* 490 U.S. 1, 13 (1989)). In evaluating reasonable suspicion, courts "must consider 'the totality of the circumstances—the whole picture.'" *Sokolow*, 490 U.S. at 8 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). This reasonable suspicion inquiry "allows officers to draw on their own experience and

specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 418).

The reasonable suspicion that justifies the *Terry* stop of a suspect also justifies a subsequent protective frisk of that suspect, where officers have reason to believe that the suspect may pose a danger to the Officers or other individuals. *Terry*, 392 U.S. at 30. In order to conduct a *Terry* "pat-down," an Officer must have an articulable, reasonable suspicion that the defendant is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 334 (2009); *United States v. Kithcart*, 134 F.3d 529, 532 (3d Cir. 1998). The test is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Kithcart*, 134 F.3d at 532 (quoting *Terry*, 392 U.S. at 21).

In assessing the legality of a *Terry* stop, the Court must first pinpoint the "moment of seizure" and then determine "whether that seizure was justified by reasonable, articulable facts known to [the Officer] as of that time that indicated that [the suspect] was engaged in criminal activity." *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003). It is well-established that a Fourth Amendment "'seizure does not occur simply because a police Officer approaches an individual and asks a few questions.'" *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Such an encounter, that is short in duration, is characterized as "consensual" and does not amount to a Fourth Amendment seizure because "the citizen has the ability to engage in or terminate the encounter." *Id*. (citing *United States v. Wilson*, 413 F.3d 382, 386-87 (3d Cir. 2005)). The Supreme Court has articulated that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Curley v. Klem*, 298 F.3d 271,

279 (3d Cir. 2002) (stating that "[a] seizure occurs whenever an Officer restrains the freedom of a person to walk away") (citation and internal quotation marks omitted). "Only when the Officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [the court] conclude that a 'seizure' has occurred." *Bostick*, 501 U.S. at 434 (quoting *Terry*, 392 U.S. at 20 n.16 (1968)); *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) ("A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement.").

### B. Reasonable Suspicion

In evaluating whether the disputed evidence must be suppressed, the Court must first determine whether reasonable suspicion justified the seizure of the slide and the pat-down of Defendant. In evaluating reasonable suspicion, courts "must consider 'the totality of the circumstances—the whole picture.'" *Sokolow*, 490 U.S. at 8 (quoting *Cortez*, 449 U.S. at 417). Here, Officer Benitez made his observations and took action in the context of suspicious conduct taking place in a crowded nightclub, which has a recorded history of violence, including incidents involving the discharge of weapons.

#### a. Seizure of Firearm Slide

The initial step of any Fourth Amendment seizure analysis is "to determine whether a seizure took place and, if so, when the seizure occurred." *United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014) (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008); *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003)). For Fourth Amendment purposes, a "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113 (1984). The Court finds that when Officer Benitez physically took control of the slide by placing his foot on it and telling Santiago that he could not have it back, the slide was seized by Officer Benitez.

However, the warrantless seizure of the slide was not *per se* unreasonable. *United States v. Place*, 462 U.S. 626, 701 (1983). As the Supreme Court stated in *Terry*, "we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." 392 U.S. at 24. Where an officer has a reasonable articulable suspicion "that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Id.*

While *Terry* involved the temporary seizure of persons, the Supreme Court applied the *Terry* doctrine to the temporary seizure of property in *United States v. Place*, 462 U.S. 626. In *Place* the Court found that the temporary seizure of luggage on the basis of reasonable, articulable suspicion that the luggage contains contraband or evidence of a crime "is constitutional so long as the seizure is not overly intrusive upon the person's privacy interest in the property, and so long as the property is not detained for a long period of time." *United States v. Frost*, 999 F.2d 737, 740 (3d Cir. 1993) (citing *Place*, 462 U.S. at 707). *Terry* stops, and seizures of property authorized by *Place*, require a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. at 703.

The Court finds that the seizure of the slide in the instant matter was supported by reasonable suspicion. As testimony at the hearing established, this particular nightclub has a history of violent crime, including a number of assaults and incidents involving the discharge of weapons. Officer Benitez's attention was attracted to Santiago when he observed the first object fall from Santiago's pant leg, which he saw Santiago retrieve and place in his rear pants pocket.

8

This observation was followed by a second object, which Officer Benitez identified as a firearm slide, falling from Santiago's other pant leg. During this time, Officer Benitez also observed Santiago fiddling with his pants in a suspicious way. Officer Benitez testified that these observations suggested to him, as an experienced law enforcement officer, that there was a firearm present. *Arvizu*, 534 U.S. at 273 (officers may use their experience and training to make deductions).

Given the totality of the circumstances facing Officer Benitez when he stepped on the slide, together with his law enforcement experience, reasonable suspicion existed supporting seizure. In a crowded nightclub with a history of weapons discharge and other violence, where an individual is fiddling with his pants and a weapons component has fallen out of his pant leg shortly after another object had fallen from his other pant leg and had been placed in the individual's back pocket, it would be "clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying [an illegal] weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24. This minimal intrusion on Santiago's Fourth Amendment rights—seizure of the slide of a firearm—is outweighed by the substantial governmental interest in officer safety and safety of the patrons in the crowded nightclub. Accordingly, the Court finds that Officer Benitez's seizure of the slide was legally justified.

### b. Pat-Down of Defendant

As noted earlier, Santiago asked Officer Benitez to speak with him and they walked outside of the nightclub, away from the crowd. Under the circumstances here, this was a consensual encounter, no aspect of which escalated it to the point where Santiago himself was seized. *See, e.g., United States v. Jackson*, 575 F. App'x 59, 62 (3d Cir. 2014) (officers did not seize defendant when they placed their hands on him to guide him through a crowded bar in order to speak with him elsewhere in the establishment).

However, once outside the nightclub, Officer Benitez engaged in a pat-down search of Santiago. The same reasons described above with respect to the seizure of the firearm slide created the necessary reasonable suspicion for any implicit seizure that the pat-down involved. *United States v. Martel*, 966 F. Supp. 317, 322 (D.N.J. 1997) ("it is implicit in the rationale of *Terry* that a "seizure" of the person, however limited, is a necessary predicate to the pat search for weapons").

Moreover, reasonable suspicion also existed to support the pat-down of Santiago in that Officer Benitez had reason to believe that Santiago may have posed a danger to Officer Benitez or others, (*Terry*, 392 U.S. at 30); or that Santiago may be armed and dangerous (*Kithcart*, 134 F.3d at 532). At the time of the pat-down, Officer Benitez had already made all of the observations previously discussed, including observing Santiago fiddling with his pants at the bar, which, in this context, supports the conclusion that Santiago was armed and dangerous. *See United States v. Calloway*, 571 F. App'x 131, 136–37 (3d Cir. 2014) ("furtive hand movements," and movements consistent with attempting to conceal something supported Officer's reasonable, articulable suspicion that suspect was armed and dangerous). In addition, Santiago's unprompted statement— "please don't lock me up" [7]—after Officer Benitez seized the firearms slide provided further support for Officer Benitez's reasonable belief. Accordingly, as Officer Benitez had the requisite reasonable suspicion, the firearm discovered as a result of the pat-down of Santiago will not be suppressed.

### C. Statement Regarding Firearms License

In *Miranda v. Arizona*, the Supreme Court established the now well-recognized legal principle that under the Fifth Amendment the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it

---

[7] Santiago's request that he not be arrested was made voluntarily, and not in response to any question posed by Officer Benitez.

demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). *Miranda* warnings are required when a suspect is "(1) 'in custody' and (2) subject to 'interrogation' by the [g]overnment." *United States v. Dupree*, 617 F.3d 724, 731 n.7 (3d Cir. 2010) (citations omitted).

A suspect is "in custody" when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "This determination is objective, based on 'how a reasonable man in the suspect's position would have understood his situation.'" *United States v. May*, 87 F. App'x 223, 226-27 (3d Cir. 2003) (quoting *Berkemer*, 468 U.S. at 442.) "For a person to be in custody when he has not been arrested, 'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so.'" *United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006) (quoting *Steigler v. Anderson*, 496 F.2d 793, 799 (3d Cir. 1974)). In evaluating whether a suspect is "in custody," handcuffing of the suspect is highly probative, but not necessarily dispositive. *Compare Murphy v. Mifflin Cty. Reg'l Police Dep't*, 548 F. App'x 778, 781 (3d Cir. 2013) (citing *Baker v. Monroe Twp.,* 50 F.3d 1186, 1193 (3d Cir.1995)) ("the use of handcuffs does not necessarily transform an investigatory seizure into a formal arrest requiring probable cause") *with United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("Handcuffs are generally recognized as a hallmark of a formal arrest.").

An "interrogation" has been defined as "(a) conduct intentionally designed to evoke a confession, as well as (b) any conduct an Officer should reasonably have foreseen would elicit an inculpatory response." *United States v. Bonner*, 469 F. App'x 119, 126 (3d Cir. 2012) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

11

If Officer Benitez's conduct in the course his brief investigation rose to the level of a constitutional violation, 23 V.I.C. § 488 provides no safe haven. As the Court explained in *St. Rose*, Virgin Islands statutes cannot limit constitutional protections. *United States v. Rose*, 2016 WL 1611438, at *8 (D.V.I. Apr. 21, 2016).

At the time that Officer Benitez asked Santiago about whether he had a license for the firearm found on his person, Santiago had been placed in handcuffs outside of Chris' Hideaway. A firearm[8] had just been found on his person and seized. Although the use of handcuffs may not be dispositive, *Murphy*, 548 F. App'x at 781, the Court finds that the totality of the circumstances, including the use of handcuffs at this point, suggests that Santiago—in contrast to the period immediately before when he was in engaged in an unrestrained and consensual conversation with Officer Benitez—was in custody when Officer Benitez asked about the firearms license.

Further, inquiring about the possession of a firearms license in this context constitutes an interrogation: it is intentionally designed to evoke a confession (especially in the wake of Santiago's request that he not be arrested) or, at least, Officer Benitez should have reasonably foreseen that the question would elicit an inculpatory response. *Bonner*, 469 F. App'x at 126. As a custodial interrogation, Santiago should have had the benefit of *Miranda* warnings prior to answering Officer Benitez's question about the license. *Dupree*, 617 F.3d at 731 n.7. As Santiago was not *Mirandized* when the question was posed, his answer must be suppressed.

**D. Probable Cause**

"The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Probable cause requires "only

---

[8] The weapon stock found on Santiago's person was in addition to the firearms slide previously seized.

a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Holmes*, 69 F. App'x 66, 67-68 (3d Cir. 2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)) (quotations omitted). Like the analysis for reasonable suspicion, courts "assess the existence of probable cause from the perspective of an objective law enforcement officer considering the totality of the circumstances." *United States v. Brown*, 565 F. App'x 98, 101 (3d Cir. 2014).

The Court finds that probable cause to arrest Santiago existed from the time that Officer Benitez found the stock of the weapon as a result of a pat-down. At that time, Officer Benitez had observed a firearm slide fall from Santiago's person, and discovered a weapon stock on his person after Santiago had informed him that he did not have the remainder of the weapon in his possession. Santiago had also requested that Officer Benitez not arrest him—a statement made without prompting and which would give rise to the inference that Santiago was not carrying the weapon legally. *See Holmes*, 69 F. App'x at 67-68 (noting that probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity" (quoting *Gates*, 462 U.S. at 243 n.13 (quotations omitted))). These circumstances would "warrant a person of reasonable caution to conclude that an offense has been committed by [Defendant]." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). Both requesting not to be arrested and lying about having the remainder of the weapon in his possession allowed Officer Benitez to infer that Santiago was carrying the firearm without a permit, in violation of the law. Given the totality of the circumstances, the Court finds that Officer Benitez had probable cause to effect an arrest at the time he placed Santiago in handcuffs outside of Chris' Hideaway, and no evidence must be suppressed for want of probable cause.

Probable cause to arrest Defendant only increased from this point. Despite the *Miranda* violation, Santiago's statement that he did not have a license may be considered in determining

the existence of probable cause provided that the statement was voluntary. *United States v. Morales*, 788 F.2d 883, 886 (2d Cir. 1986) (holding that un-mirandized, voluntary statements are a proper basis for probable cause to arrest); *United States v. Guillen*, 657 F. App'x 690, 692 (9th Cir. 2016) (permitting un-mirandized voluntary statement to be used in determining probable cause) (citing *United States v. Patterson*, 812 F.2d 1188, 1193 (9th Cir. 1987)); *United States v. $107,840.00 in U.S. Currency*, 784 F. Supp. 2d 1109, 1118 (S.D. Iowa 2011) (holding that un-mirandized, voluntary statements are a proper basis for probable cause to arrest); *United States v. Jones*, 572 F. Supp. 2d 601, 612 (W.D. Pa. 2008), *aff'd on other grounds*, 388 F. App'x 175 (3d Cir. 2010) ("exclusion of an un-mirandized voluntary custodial statement for purposes of trial does not prevent the use of that statement for establishing probable cause under the Fourth Amendment; the exclusionary rule of the Fourth Amendment operates independently of the *Miranda* rule") (citing *United States v. DeSumma,* 272 F.3d 176, 181 (3d Cir.2001)).

Courts look to the totality of the circumstances to determine whether a statement was voluntary. *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994). "[A] statement is involuntary when the suspect's will was overborne in such a way as to render his confession the product of coercion." *United States v. Latz*, 162 F. App'x 113, 118 (3d Cir. 2005) (quoting *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002)) (quotations omitted). "A necessary predicate to a finding of involuntariness is coercive police activity." *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005).

The evidence establishes that Santiago's statement was obtained voluntarily. During the entire encounter, Officer Benitez and Santiago were referring to each other by their respective nicknames. Santiago requested the opportunity to talk to Officer Benitez, and Officer Benitez acceded to that request. Officer Benitez never raised his voice or threatened Santiago, with a weapon or otherwise. Santiago had just been placed in handcuffs at the time he was asked whether

14

he possessed a license for the firearm. None of these circumstances suggest that Santiago's will was "overborne in such a way as to render his confession the product of coercion." *Latz*, 162 F. App'x at 118.

As the statement was voluntary, additional grounds for probable cause existed once Santiago admitted that he did not have a firearms license. Probable cause was further underscored when Officer Karen Stout confirmed that Santiago did not possess a firearms license. Based on the facts available to Officer Benitez from the time that he discovered the weapon stock, the Court finds that probable cause existed to arrest Santiago.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is granted with respect to Defendant's statement to Santiago at Chris' Hideaway that he did not possess a license to carry a firearm. Defendant's Motion is denied with respect to all other statements and physical evidence sought to be suppressed.

Date:  January 16, 2017 _____/s/_____
                        WILMA A. LEWIS
                        Chief Judge